**ORIGINAL**

1   Mark Malachowski (CSBN 242696)
    Attorney at Law
2   Malachowski and Associates
    760 Market Street, Suite 947
3   San Francisco, CA 94102
    Telephone: (415) 986 - 4040
4   FAX: (415) 986 – 8068
    mark@marklawsf.com
5

6   Attorney for Mohamed Abouelhassan

FILED Feeled

2008 AUG -7  A 10: 33

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

E-FILING

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                       SAN JOSE DIVISION

11

12   Mohamed Abouelhassan,              Case No.  **C08  03774  PVT**

13          Plaintiff,                  ) **COMPLAINT IN ACTION BASED ON**
                                        ) **RACE DISCRIMINATION ALLEGING**
14   v.                                 ) **VIOLATIONS OF SECTION 1981, TITLE**
                                        ) **VII, AND THE FIFTH AND THE**
15   The United States of America (U.S. ) **THIRTEENTH AMENDMENTS TO US**
     Government), Secretary of the United States ) **CONSTITUTION**
16   Army Pete Geren, Elena Levintova Allison, )
     Defense Language Institute, Department of )
17   Defense,                           )
                                        )
18          Defendants.                 )

19   _____

20

21                          *JURISDICTION*

22        This Court has jurisdiction of this action under 28 U.S.C. § 1331, 28 U.S.C. § 1343(3)

23   and (4) and 42 U.S.C. § 2000(e)-(5) f in order to protect rights guaranteed by 42 U.S.C. § 1981,

24   Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e), and the Fifth and the Thirteenth

25

Case No. C07-4038 RS
TITLE 7 COMPLAINT

1   Amendment to the United States Constitution.

2

3   ***PARTIES***

4   2.  Plaintiff Mohamed Abouelhassan (hereinafter referred to as "Plaintiff" or "Abouelhassan")

5   is an individual, residing in San Jose, Santa Clara County, California.

6   3.  Defendants The United States of America (U.S. Government) in its capacity as employer and

7   principal.

8   4.  Pete Geren, Secretary of the United States Army, in his official capacity as principal.

9   5.  Elena Levintova Allison, Defense Language Institute, Department of Defense, in her official

10  capacity as Mr. Abouelhassan's supervisor (hereinafter referred to collectively as "Defendants").

11

12  ***CONDITIONS PRECEDENT***

13  6.  Plaintiff Abouelhassan has fulfilled all conditions precedent to the institution of this action

14  under 42 U.S.C. § 2000(e). He filed timely charges with the Equal Employment Opportunity

15  Commission, and received a final decision (Attachment A). Plaintiff is filing this action under

16  the provisions of Section 1614.407 Civil action: Title VII, Age Discrimination in Employment

17  Act and Rehabilitation Act.

18      A complainant who has filed an individual complaint, an agent who has filed a class

19  complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint

20  is authorized under Title VII, the ADEA [Age Discrimination in Employment Act] and the

21  Rehabilitation Act to file a civil action in an appropriate United States District Court:

22      (a)  Within 90 calendar days of receipt of the final action on an individual or class

23  complaint if no appeal has been filed;

24

25

Case No. C07-4038 RS
TITLE 7 COMPLAINT

## FACTS

7.    Plaintiff, an Arab Egyptian, was hired by Defense Language Institute (DLI) as an Assistant Professor, on or about April 3, 2006.

8.    Mr. Abouelhassan was discriminated against based on his 1) race, 2) nationality, 3) religion, and 4) sex. Mr. Abouelhassan is a male Egyptian of the Arab race. He is a practicing Muslim.

9.    Mr. Abouelhassan entered the DLI while the agency's demographics were rapidly changing. They still are. For many years the DLI was dominated by Russian-speaking employees. Most of the employees were either from Russia and/or had an Eastern European ethnic background. As a result of many years of high demand for Russian linguists many of the supervisors at the DLI have Russian backgrounds.

10.    Mr. Abouelhassan was hired by the DLI, Department of the Army and supervised by Elena Levintova Allison (Ms. Allison). Ms. Allison is of Russian descent. Ms. Allison's father worked for the DLI for many years and was a Russian linguist.

11.    However, the war on terror has created a demand for Arabic speaking interpreters. The DLI has had to hire many Arab interpreters to help fight the war on terror. Mr. Abouelhassan was hired as one such interpreter. The need for Arabic interpreters has created strife within the DLI. Many of the Russian supervisors hold the newer Arab employees in contempt.

12.    Historically, in a political sense, the USSR, or larger Russia, has had a benefactor/client relationship with Egypt, which has led many Russians to consider Egyptians as second class citizens. Here, the Arab interpreters have faced discrimination at the hands of the Russian supervisors. Egyptians consist of nearly 90% of the Arabs at this workplace. As an Egyptian Arab, Mr. Abouelhassan has been one victim of such discrimination.

13.    Plaintiff's working environment was so unusually adverse that Mr. Abouelhassan felt compelled to resign. Furthermore, Plaintiff had a reason to believe that the employer either intended to force such resignation or had actual knowledge of the intolerable working conditions.

Case No. C07-4038 RS
TITLE 7 COMPLAINT

1

**FIRST FEDERAL CLAIM FOR RELIEF**

2    13.   Plaintiff incorporates and realleges paragraphs 1 through 12 as if fully rewritten herein.

3    14.   The above discriminatory and retaliatory pattern and practice by defendant, its agents and

4    employees violates Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e.

5    15.   Mr. Abouelhassan has faced continuing and ongoing discrimination since the first day of his

6    employment.  Mr. Abouelhassan was hired with an annual salary of $52,000.  One week prior to

7    Mr. Abouelhassan's employment, the DLI hired a Russian interpreter (linguist), Svetlana

8    Witmer, at an annual salary of $58,000.

9    16.   Ms. Witmer was hired at the same rank and for the same team as Mr. Abouelhassan.  Her

10   job requires the same equal skill, effort, and responsibility as does Mr. Abouelhassan's job and

11   both jobs are performed under similar working conditions. Despite this, Ms. Witmer earned

12   $6,000 more per year than Mr. Abouelhassan.  The DLI pays the female interpreters more than

13   male interpreters.  When Mr. Abouelhassan complained about the pay to his supervisor, Ms.

14   Allison, he was told there was nothing that could be done.

15   17.  This $500 deferential in monthly pay, due to Mr. Abouelhassan's sex, over a period of

16   approximately two years, damaged Mr. Abouelhassan financially.

17   18.  As a direct and proximate result of said acts, plaintiff has suffered and continues to suffer

18   loss of employment, loss of income, loss of other employment benefits, and has suffered and

19   continues to suffer distress, humiliation, great expense, embarrassment, and damage to his

20   reputation.

21

**SECOND FEDERAL CLAIM FOR RELIEF**

22   19.   Plaintiff incorporates and realleges paragraphs 1 through 18 as if fully rewritten herein.

23   20.   The above discriminatory and retaliatory pattern and practice by defendant, its agents and

24

25

Case No. C07-4038 RS
TITLE 7 COMPLAINT

1  employees violate the Thirteenth Amendment to the Constitution as protected by 42 U.S.C. §

2  1981.

3  21.  Mr. Abouelhassan has faced continuing and ongoing discrimination since the first day of his

4  employment.  Mr. Abouelhassan was hired with an annual salary of $52,000.  One week prior to

5  Mr. Abouelhassan's employment, the DLI hired a Russian interpreter (linguist), Svetlana

6  Witmer, at an annual salary of $58,000.

7  22.  Ms. Witmer was hired at the same rank and for the same team as Mr. Abouelhassan.  Her

8  job requires the same equal skill, effort, and responsibility as does Mr. Abouelhassan's job and

9  both jobs are performed under similar working conditions. Despite this, Ms. Witmer earned

10  $6,000 more per year than Mr. Abouelhassan.  The DLI pays the female interpreters more than

11  male interpreters.  When Mr. Abouelhassan complained about the pay to his supervisor, Ms.

12  Allison, he was told there was nothing that could be done.

13  23.  This $500 deferential in monthly pay, due to Mr. Abouelhassan's sex, over a period of

14  approximately two years, damaged Mr. Abouelhassan financially.

15  24.  As a direct and proximate result of said acts, plaintiff has suffered and continues to suffer

16  loss of employment, loss of income, loss of other employment benefits, and has suffered and

17  continues to suffer distress, humiliation, great expense, embarrassment, and damage to his

18  reputation.

19  ### THIRD FEDERAL CLAIM FOR RELIEF

20  25.  Plaintiff incorporates paragraphs 1 through 24 as if fully rewritten herein.

21  26.  The actions of defendant, its agents and employees violate plaintiff's rights and privileges as

22  guaranteed by the Thirteenth Amendment to the United States Constitution.

23  27. Mr. Abouelhassan has faced continuing and ongoing discrimination since the first day of his

24  employment.  Mr. Abouelhassan was hired with an annual salary of $52,000.  One week prior to

25

Case No. C07-4038 RS
TITLE 7 COMPLAINT

1   Mr. Abouelhassan's employment, the DLI hired a Russian interpreter (linguist), Svetlana

2   Witmer, at an annual salary of $58,000.

3   28.  Ms. Witmer was hired at the same rank and for the same team as Mr. Abouelhassan.  Her

4   job requires the same equal skill, effort, and responsibility as does Mr. Abouelhassan's job and

5   both jobs are performed under similar working conditions. Despite this, Ms. Witmer earned

6   $6,000 more per year than Mr. Abouelhassan.  The DLI pays the female interpreters more than

7   male interpreters.  When Mr. Abouelhassan complained about the pay to his supervisor, Ms.

8   Allison, he was told there was nothing that could be done.

9   29.  This $500 deferential in monthly pay, due to Mr. Abouelhassan's sex, over a period of

10  approximately two years, damaged Mr. Abouelhassan financially.

11  30.  As a direct and proximate result of said acts, plaintiff has suffered and continues to suffer

12  loss of employment, loss of income, loss of other employment benefits, and has suffered and

13  continues to suffer distress, humiliation, great expense, embarrassment, and damage to his

14  reputation.

### FORTH FEDERAL CLAIM FOR RELIEF

16  31.  Plaintiff incorporates and realleges paragraphs 1 through 30 as if fully rewritten herein.

17  32.  The actions of defendant, its agents and employees constitute intentional infliction of

18  emotional distress upon plaintiff.

19  33.  Abouelhassan alleges intentional infliction of severe emotional distress.

20  34.  Abouelhassan has faced continuing harassment and discrimination throughout his

21  employment.  The Arab translators were degraded and demeaned by the Russian supervisors.  In

22  one conversation (on or about July, 2007) between Ms. Allison and another Russian supervisor,

23  Natasha Antokhin, several of the Arabs translators were called "stupid Arabs", "bad", "does not

24  have a clue" and "difficult/stubborn."  In another conversation, in or about August, 2007, Ms.

25  Allison told her supervisor, Greg Brendel that "these Arabs, they get high degrees from their

Case No. C07-4038 RS
TITLE 7 COMPLAINT

1   countries without even knowing grammar". Mr. Abouelhassan believes that such comments

2   were common.

3   35.   Mr. Abouelhassan was also treated differently than the Russian interpreters. In May 2007,

4   Mr. Abouelhassan was told he could work remotely from his home. In reliance on this

5   agreement, Mr. Abouelhassan moved to Ceres, California. After approximately two months, Mr.

6   Abouelhassan was told he had to return to the office in Monterey. This was despite the fact that

7   Ms. Allison allowed a Russian, Andrei Aleinikov, to continue to work remotely, and Ms. Allison

8   herself was working remotely. When Mr. Abouelhassan returned to his office it was not ready

9   for work. There was no phone, network access, email connection or printer available. When Mr.

10  Abouelhassan complained, Ms Allison refused to deal with the situation.

11  36.   Ms. Allison put Mr. Abouelhassan on probation when he returned to the Monterey office

12  because of allegedly poor work performance. This was despite the fact that Mr. Abouelhassan

13  did more work than his colleagues. The average employee developed six to seven lessons while

14  Mr. Abouelhassan developed eight lessons. Ms. Allison claimed Mr. Abouelhassan had done no

15  lessons, as an excuse to put him on probation. Mr. Abouelhassan was given a poor review

16  despite better than average performance. Ms. Allison continued to give Mr. Abouelhassan poor

17  reviews despite his superior performance.

18  37.   In October 2007, Ms. Allison gave Mr. Abouelhassan a 3 on a scale of 1 to 5, with 1 being

19  the best, claiming Mr. Abouelhassan completed 8 out of the required 12 lessons. In fact, Mr.

20  Abouelhassan completed 13 lessons. When Mr. Abouelhassan showed Ms. Allison that he

21  actually completed 13 lessons, she claimed that she did not have time to review the issue.

22  38.   The hostile work environment and atmosphere of fear of retaliation has had a chilling affect

23  on DLI personnel asserting their right to a discrimination free workplace. The severe emotional

24  distress that Abouelhassan is suffering is current and ongoing. The Supreme Court has recently

25

Case No. C07-4038 RS
TITLE 7 COMPLAINT

1  reaffirmed that victims of racial discrimination are protected from retaliation under Title VII

2  §1982 *CBOCS West, Inc. v. Humphries*, 553 U.S. (2008).

3  39.  Ms. Allison was aware of Mr. Abouelhassan's plan to purchase a house in Ceres,

4  California, when she agreed to let him work remotely. When Mr. Abouelhassan had to return to

5  the office in Monterey rather than work remotely, it resulted in financial hardship resulting in the

6  loss of his community property interest in the house in Ceres, California, the equity which is

7  estimated to have been worth $150,000.

8  40.  It was extreme and outrageous for Ms. Allison to initially allow Mr. Abouelhassan to work

9  remotely, knowing that Abouelhassan would purchase a house in Ceres, California, and that

10  Abouelhassan would then move his family to Ceres, California, and then for Ms. Allison, only a

11  short time later (approximately two months) capriciously and without justification, revoke his

12  ability to work remotely.

13  41.  It is not feasible to commute from Ceres to Monterey every day because it is approximately

14  a three hour drive each way. Also, there was no intervening event between granting the

15  allowance and revoking it that would justify Ms. Allison's revoking Abouelhassan's remote

16  workplace status.

17  42.  Thus, Plaintiff alleges that Ms. Allison granted him the remote workplace allowance with

18  the intent that he purchase a house and move his family to Ceres, and then be forced to move

19  back closer to work after the allowance was revoked.

20  43.  As a direct and proximate result of said acts, plaintiff has suffered and continues to suffer

21  loss of employment, loss of income, loss of other employment benefits, and suffered and

22  continues to suffer distress, humiliation, great expense, embarrassment, and damage to his

23  reputation.

24

25

Case No. C07-4038 RS
TITLE 7 COMPLAINT

# FIFTH FEDERAL CLAIM FOR RELIEF

44.  Plaintiff incorporates and realleges paragraphs 1 through 43 as if fully rewritten herein.

45.  Abouelhassan alleges discrimination in violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment of the U.S. Constitution.

46.  Abouelhassan alleges that the rules governing performance reviews and working from a remote location were applied in a discriminatory manner, on the basis of race, sex and national origin, in violation of his constitutional rights.

47.  In October 2007, Ms. Allison gave Mr. Abouelhassan a poor review (a 3 on a scale of 1 to 5, with 1 being the best) when in fact his work deserved a very good review (1 on a scale of 1 to 5, with 1 being the best).

48.  On November 19, 2007, Ms. Allison informed Mr. Abouelhassan that he would be laid off if there was no available spot for him in another department or program.  Moreover, Mr. Abouelhassan, was informed that in order to keep his job, he would  have to go through a new hiring process, which requires submitting a resume, passing an interview, and performing three teaching presentations for the hiring panel, all in competition with outside applicants.

49.  However, during this re-organization, other similarly situated employees, and even those who had less seniority than Mr. Abouelhassan, were given new assignments, with no threat of lay off, and no requirement to go through a new hiring process.

50.  Mr. Abouelhassan alleges that the poor review based on a discriminatory application of the performance rules, is being as a means of effecting a constructive discharge and may be used as a pretext to justify an impending layoff.

51.  By doing the aforementioned acts, Ms. Allison violated Mr. Abouelhassan's equal protection rights under the due process clause of the Fifth Amendment of U.S. Constitution.

52.   As a direct and proximate cause of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer damages, including reduced pay, loss of promotional opportunities, severe emotional distress, and other damages in an amount to be proven at trial.

53.   As a matter of public policy, the U.S. Army has historically been on the forefront of integration.  At this pivotal juncture in history, when so much depends on Arabic speaking citizens providing insight into the Middle East question, the U.S. Government can ill afford to alienate the very parties that it relies on for its intelligence.

WHEREFORE, plaintiff demands judgment against defendant:

1. Preliminarily and permanently restraining defendant from engaging in the aforementioned conduct; and

2. Awarding plaintiff back pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory and retaliatory acts and practices of defendant; and

(a) awarding plaintiff compensatory and punitive damages; and

(b) awarding reasonable attorneys' fees and costs incurred in this action; and

(c) ordering any other relief this Court deems to be just and appropriate.

Respectfully submitted,

Dated:   8/6/0 P

Mark Malachowski,
Attorney for Plaintiff

Case No. C07-4038 RS
TITLE 7 COMPLAINT

1

2

3    JURY DEMAND

4    Plaintiff demands a jury to hear and decide all issues of fact.

5    Respectfully submitted,

6

7

8    Dated:  8/6/08                                    Mark Malachowski

9                                                     Attorney for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case No. C07-4038 RS
TITLE 7 COMPLAINT

# ATTACHMENT A

1 **DEPARTMENT OF THE ARMY**
UNITED STATES ARMY INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, US ARMY GARRISON, PRESIDIO OF MONTEREY
1759 LEWIS ROAD, SUITE 210
MONTEREY, CA 93944-3223

REPLY TO
ATTENTION OF

May 19, 20008

Equal Employment Opportunity Office

SUBJECT:    Letter of Dismissal of EEO Discrimination Complaint

Mr. Mark Malachowski
760 Market Street, Suite 947
San Francisco, California  94102

Complaint of Mr. Mohamed Abouelhassan
and Pete Geren, Secretary of the Army
Army Docket No.  ARPOM07OCT04415

Dear Mr. Malachowski:

This is the Department of the Army's final decision in the above-captioned equal
employment opportunity complaint filed by your client November 21, 2007.  Therein,
your client alleged discrimination on the bases of his race (Arab), color (non-
white/brown), sex (male), national origin (Egyptian) and religion (Muslim) when:

a.  In March 2006, his starting pay was set lower than another employee
(different sex, race, religion and nationality) whose position required no more than the
position to which he was appointed;

b.  In May 2007, Complainant's telework arrangement was terminated after two
months while another employee (Russian) was allowed to continue to work remotely;

c.  During July-August 2007, Complainant was subjected to performing non-duty
related tasks that were degrading and demeaning.  Comments, such as the following:
"stupid Arabs", "bad", "does not have a clue", "difficult/stubborn", "these Arabs, they get
high degrees from their countries without even knowing grammar", were made during
conversations between supervisors;

d.  In May 2007, Complainant was placed on a performance improvement plan
because of  poor work performance even though he produced more work than his
colleagues.  In September 2007, Complainant received a 67% passing rate as a result
of not completing the required number of lessons;

e.  Complainant was required to provide medical documentation for each
absence and submit leave requests for each time he was late, the most recent incident
occurring October 25, 2007;  and

f. On November 19, 2007, Complainant's supervisor informed him that he would be laid off due to lack of available positions?

This office received a copy of Civil Action No. 5:07-cv-04038-RS (as amended), filed 12/03/07 in the United States District Court, Northern District of California, San Jose Division. This action was filed by your office for Mr. Abouelhassan. The allegations were the same as the issues in the above referenced complaint. Therefore, inasmuch as 180 days have elapsed since the filing of the formal complaint, and in accordance with the regulation stated below, I have decided to dismiss the complaint in its entirety for the following reason:

Under 29 Code of Federal Regulations, Part 1614.107 (a)(3), an agency may dismiss allegations that are "the basis of a pending civil action in United States District Court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint, or that was the basis of a civil action decided by a United States District Court in which the complainant was a party."

If your client is dissatisfied with this decision, his appeal rights are:

## APPEAL RIGHTS FOR NONMIXED COMPLAINTS

1. An appeal may be filed with the Equal Employment Opportunity Commission (EEOC), Director of Federal Operations, P.O. Box 19848, Washington, D.C. 20036 within 30 calendar days of the date of receipt of this decision. The 30 calendar day period for filing an appeal begins on the date of receipt of this decision. An appeal shall be deemed timely if it is delivered in person, transmitted by facsimile or postmarked before the expiration of the filing period or, in the absence of a legible postmark, if the appeal is received by the Commission by mail within 5 calendar days after the expiration of the filing period. The complainant will serve a copy of the Notice of Appeal/Petition, EEOC Form 573, to the EEO/Civil Rights Office (Deputy for EEO Compliance and Complaints Review (EEOCCR)), Department of the Army, ATTN: SAMR-EO-CCR, 1901 South Bell Street, Suite 109B, Arlington, VA 22202-4508, and furnish a copy to the agency representative, Mr. Michael Halperin, Staff Judge Advocate Office, 1336 Plummer Street, Monterey, California 93944, facsimile 831-242-7238, e-mail michael.halperin@us.army.mil, at the same time it is filed with the Commission. In or attached to the appeal to the Commission, you must certify the date and method by which service was made to the Deputy for EEOCCR and the agency representative.

2. The complainant may file a brief or statement in support of his appeal with the Office of Federal Operations (OFO). The brief or statement **must** be filed with the OFO within 30 calendar days from the date the appeal is filed. The complainant will serve a copy of the brief or statement submitted in support of the appeal on the Deputy for EEOCCR and on the agency representative at the addresses shown above in paragraph 1 at the same time the brief or statement is filed with the Commission. The

regulation providing for appeal rights is contained in Title 29 of the Code of Federal Regulations, a part of which is reproduced below:

**Part 1614.401  Appeals to the Commission.**

(a)  A complainant may appeal an agency's final action or dismissal of a complaint.

(b)  An agency may appeal as provided in Section 1614.110(a).

(c)  A class agent or an agency may appeal an administrative judge's decision accepting or dismissing all or part of a class complaint; a class agent may appeal a final decision on a class complaint; a class member may appeal a final decision on a claim for individual relief under a class complaint; and a class member, a class agent or an agency may appeal a final decision on a petition pursuant to Section 1614.204(g)(4).

(d)  A grievant may appeal the final decision of the agency, the arbitrator or the Federal Labor Relations Authority (FLRA) on the grievance when an issue of employment discrimination was raised in a negotiated grievance procedure that permits such issues to be raised.  A grievant may not appeal under this part, however, when the matter initially raised in the negotiated grievance procedure is still ongoing in that process, is in arbitration, is before the FLRA, is appealable to the MSPB [Merit Systems Protection Board] or if 5 U.S.C. Section 7121(d) is inapplicable to the involved agency.

(e)  A complainant, agent or individual class claimant may appeal to the Commission an agency's alleged noncompliance with a settlement agreement or final decision in accordance with Section 1614.504.

**Part 1614.402  Time for appeals to the Commission.**

(a)  Appeals described in Section 1614.401(a) and (c) must be filed within <u>30 calendar days</u> of receipt of the dismissal, final action or decision.  Appeals described in Part 1614.401(b) must be filed within <u>40 calendar days</u> of receipt of the hearing file and decision.  Where a complainant has notified the EEO Director [Deputy for EEOCCR] of alleged noncompliance with a settlement agreement in accordance with Section 1614.504, the complainant may file an appeal <u>35 calendar days</u> after service of the claim of noncompliance, but no later than <u>30 calendar days</u> after receipt of the agency's determination.

(b)  If the complainant is represented by an attorney of record, then the <u>30 calendar day</u> time period provided in paragraph (a) of this Section within which to appeal shall be calculated from the receipt of the required document by the attorney.  In all other instances, the time within which to appeal shall be calculated from the receipt of the required document by the complainant.

### Section 1614.403  How to appeal.

(a)  The complainant, agency, agent, grievant or individual class claimant (hereinafter complainant) must file an appeal with the Director, Office of Federal Operations, Equal Employment Opportunity Commission, at P.O. Box 19848, Washington, DC 20036, or by personal delivery or facsimile.  The appellant should use EEOC Form 573, Notice of Appeal/Petition [copy enclosed], and should indicate what is being appealed.

(b)  The appellant shall furnish a copy of the appeal to the opposing party [Deputy for EEOCCR and the servicing agency representative] at the same time it is filed with the Commission.  In or attached to the appeal to the Commission, the complainant must certify the date and method by which service was made on the opposing party [Deputy for EEOCCR and the servicing agency representative – addresses shown in paragraph 1 above].

(c)  If appellant does not file an appeal within the time limits of this subpart, the appeal shall be dismissed by the Commission as untimely.

(d)  Any statement or brief on behalf of a complainant in support of the appeal must be submitted to the Office of Federal Operations within 30 calendar days of filing the notice of appeal.  Any statement or brief on behalf of the agency in support of its appeal must be submitted to the Office of Federal Operations within 20 calendar days of filing the notice of appeal.  The Office of Federal Operations will accept statements or briefs in support of an appeal by facsimile transmittal, provided they are no more than 10 pages long.

(e)  The agency must submit the complaint file to the Office of Federal Operations within 30 calendar days of initial notification that the complainant has filed an appeal or within 30 calendar days of submission of an appeal by the agency.

(f)  Any statement or brief in opposition to an appeal must be submitted to the Commission and served on the opposing party within 30 calendar days of receipt of the statement or brief supporting the appeal, or, if no statement or brief supporting the appeal is filed, within 60 calendar days of receipt of the appeal.  The Office of Federal Operations will accept statements or briefs in opposition to an appeal by facsimile provided they are no more than 10 pages long.

### Section 1614.407  Civil action: Title VII, Age Discrimination in Employment Act and Rehabilitation Act.

A complainant who has filed an individual complaint, an agent who has filed a class complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under Title VII, the ADEA [Age Discrimination in Employment Act] and the Rehabilitation Act to file a civil action in an appropriate United States District Court:

(a) Within <u>90 calendar days</u> of receipt of the final action on an individual or class complaint if no appeal has been filed;

(b) After <u>180 calendar days</u> from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken;

(c) Within <u>90 calendar days</u> of receipt of the Commission's final decision on an appeal; or

(d) After <u>180 calendar days</u> from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

### Section 1614.408  Civil action: Equal Pay Act.

A complainant is authorized under Section 16(b) of the Fair Labor Standards Act (29 U.S.C. 216[b]) to file a civil action in a court of competent jurisdiction within two years or, if the violation is willful, three years of the date of the alleged violation of the Equal Pay Act regardless of whether he or she pursued any administrative complaint processing.  Recovery of back wages is limited to two years prior to the date of filing suit, or to three years if the violation is deemed willful; liquidated damages in an equal amount may also be awarded.  The filing of a complaint or appeal under this part shall not toll the time for filing a civil action.

### Section 1614.409  Effect of filing a civil action.

Filing a civil action under Section 1614.408 or Section 1614.409 shall terminate Commission processing of the appeal.  If private suit is filed subsequent to the filing of an appeal, the parties are requested to notify the Commission in writing.


3. If a civil action is filed and complainant does not have or is unable to obtain the services of a lawyer, the complainant may request the court to appoint a lawyer.  In such circumstances as the court may deem just, the court may appoint a lawyer to represent the complainant and may authorize the commencement of the action without the payment of fees, costs, or security.  Any such request <u>must</u> be made within the above referenced <u>90-calendar day</u> time limit for filing suit and in such form and manner as the court may require.

4. You are further notified that if you file a civil action, you must name the appropriate Department or Agency head as the defendant and provide his or her official title. **DO NOT NAME JUST THE AGENCY OR DEPARTMENT**.  Failure to name the head of the Department or Agency or to state his or her official title may result in the dismissal of the case.  The appropriate agency is the Department of the Army.  The head of the Department of the Army is Pete Geren, who is the Secretary of the Army.

The DA docket number identified at the top of page 1 of this letter should be used on all correspondence.

Sincerely,


Ischa W. Donahue
Equal Employment Opportunity
    Manager

Enclosure

Copy Furnished:
Mohamed Abouelhassan, Complainant
Michael Halperin, Agency representative

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

**I. (a) PLAINTIFFS**

Mohamed Abouelhassan

**DEFENDANTS**

The United States of America (U.S. Government) et al.

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Mark Malachowski (CSBN 242696)
760 Market Street, Suite 947
San Francisco, CA 94102
(415)983-0717

Attorneys (If Known)

Claire Cormier
150 Almaden Boulevard, Suite 900
San Jose, CA 95113
(408)535-5082

*(E-FILING / ADR stamps; case number stamp: C 08 03774 PVT)*

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | [ ] 861 HIA (1395ff) | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [X] 442 Employment | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities — Employment | [ ] 540 Mandamus & Other | **IMMIGRATION** | | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities — Other | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus — Alien Detainee | | |
| | | | [ ] 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Race discrimination alleging violations of section 1981, Title VII, the fifth and the thirteenth amendments to us constitution

Brief description of cause:
Plaintiff was discriminated against based on his 1) race, 2) nationality, 3) religion, and 4) sex.

**VII. REQUESTED IN COMPLAINT:**

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes [ ] No

**VIII. RELATED CASE(S) IF ANY**

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE". C 07-4038 RS

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)

- [ ] SAN FRANCISCO/OAKLAND
- [X] SAN JOSE

DATE 08/04/08    8/6/08

SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.        (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.        Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.        Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.        Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.        Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.        Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**        Example:        U.S. Civil Statute: 47 USC 553
                                                                      Brief Description: Unauthorized reception of cable service

**VII.        Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.        Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.